1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

| | |
|---|---|
| GEORGE E. JACOBS, IV, | CASE NO. 1:05-cv-01625-YNP PC |
| Plaintiff, | ORDER REQUIRING PLAINTIFF EITHER TO FILE AMENDED COMPLAINT, OR TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE |
| v. | |
| W.J. SULLIVAN, et al., | |
| Defendants. | (Doc. 25) |
| _____/ | RESPONSE DUE WITHIN 30 DAYS |

16        Plaintiff George E. Jacobs, IV ("Plaintiff") is a state prisoner proceeding pro se and in forma

17  pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is in the custody of the

18  California Department of Corrections and Rehabilitation ("CDCR") and is currently incarcerated at

19  the California State Prison in Corcoran, California.  However, the events described in Plaintiff's

20  complaint took place while Plaintiff was incarcerated at the California Correctional Institution in

21  Tehachapi, California ("CCI-Tehachapi").  Plaintiff is suing under section 1983 for the violation of

22  his rights under the First, Fourth, Eighth, and Fourteenth Amendments.  Plaintiff names W.J.

23  Sullivan (chief executive officer), D. Watson (sergeant), P. Chan (correctional officer), S. McGregor

24  (correctional officer), M. Carrasco (captain), R. Johnson (lieutenant), D. Jobb (correctional officer),

25  D. Blankenship (correctional officer), M. Crotty (correctional officer), C. Nelson (correctional

26  officer), E. Granillo (correctional officer), D. Abarquez (correctional officer), John Doe #1

27  (lieutenant), Alexander (registered nurse), and J. Adams (medical technician assistant) as defendants.

28  ///

Plaintiff has consented to jurisdiction by U.S. Magistrate Judge. (Doc. #3.) No other parties have made an appearance in this action.

For the reasons set forth below, the Court finds that Plaintiff's second amended complaint states some cognizable claims. Plaintiff will be ordered to either (1) notify the Court that he wishes to proceed only on the claims found to be cognizable in this order, or (2) file an amended complaint which cures the deficiencies identified in his second amended complaint.

## I.   **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.
///

2

1    Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

2    statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

**II.**    **Background**

     **A.**     **Procedural Background**

      This action was transferred from the district court for the Central District of California on

December 22, 2005. (Doc. #1.) On February 17, 2006, the Court dismissed Plaintiff's complaint.

(Doc. #4.) Plaintiff was given leave to file an amended complaint. On March 28, 2006, Plaintiff

filed his first amended complaint. (Doc. #6.) On May 1, 2009, the Court screened Plaintiff's first

amended complaint pursuant to 28 U.S.C. § 1915A(a). (Doc. #21.) The Court found that Plaintiff's

first amended complaint appeared to state some cognizable claims, but the handwritten complaint

was "virtually illegible." (Order Dismissing First Am. Compl. With Leave to Amend 2:28-3:1.)

Plaintiff was given leave to file a second amended complaint. On June 8, 2009, Plaintiff filed his

second amended complaint. (Doc. #25.) This action proceeds on Plaintiff's second amended

complaint.

     **B.**     **Factual Background**

      On November 9, 2004, Plaintiff was transferred to CCI-Tehachapi from Lancaster State

Prison. (Compl. ¶ 28.) Plaintiff claims that officials at Lancaster State Prison informed Defendants

that Plaintiff was a "staff assaulter" and that Plaintiff filed prison complaints against prison staff.

(Compl. ¶ 29.)

      Plaintiff alleges that on January 24, 2005, Defendant Watson purposefully withheld

Plaintiff's property "out of retaliation and vindictiveness." (Compl. ¶ 30.) Plaintiff told Defendant

Blakenship that he wanted to speak with "higher authority" about his property. (Compl. ¶¶ 30-31.)

Blankenship told Plaintiff that "today is not a good day to be doing this, because the sergeant

(Defendant D. Watson) is not to be messed with." (Compl. ¶ 32.) Watson arrived later and verbally

abused Plaintiff. (Compl. ¶ 33.) When Plaintiff requested to speak with higher authorities again,

Watson opened Plaintiff's food port and pepper sprayed Plaintiff. (Compl. ¶ 34.) Defendant Chan

joined in and the two pepper sprayed Plaintiff for at least an hour. (Compl. ¶ 35.) Defendant

McGregor opened Plaintiff's cell door about three inches so that Watson could pepper spray Plaintiff

1  directly. (Compl. ¶ 38.) As Watson yelled at Plaintiff, Plaintiff's cell door opened and a crowd of

2  guards rushed into Plaintiff's cell and attacked him. (Compl. ¶ 39.) Defendants Carrasco, Johnson,

3  Watson, Chan, and Jobb stood around Plaintiff's cell while Defendants Blankenship, Crotty,

4  Granillo, and Nelson attacked Plaintiff. (Compl. ¶ 40.) Plaintiff was escorted outside and sprayed

5  with a water hose, despite the fact that it was the middle of winter and the facility shower was

6  directly in front of Plaintiff's cell. (Compl. ¶¶ 42-43.)

7         Plaintiff was stripped naked and was escorted by Watson and Granillo to a holding cage.

8  Watson verbally taunted Plaintiff by making remarks about Plaintiff's genitals. (Compl. ¶ 44.)

9  Watson then left to check on the other officials. (Compl. ¶ 45.) Watson returned later and told

10 Plaintiff that the other officers were injured and weapons were found in Plaintiff's cell. (Compl. ¶

11 45.) Watson then pepper sprayed Plaintiff. (Compl. ¶ 45.) Plaintiff complains that Granillo

12 watched the incident without intervening. (Compl. ¶ 47.) Plaintiff requested medical attention for

13 his injuries. (Compl. ¶ 48.) Watson told Plaintiff that he would not receive medical attention unless

14 Plaintiff agreed to exit the holding cage so that the pepper spray could be washed off. (Compl. ¶ 49.)

15 Plaintiff refused and medical attention was not called. (Compl. ¶ 50.) Watson later went outside,

16 retrieved the hose, and washed Plaintiff down while he was in the holding cage. (Compl. ¶ 52.)

17 When Watson was done, medical assistance was summoned. (Compl. ¶ 52.)

18        Defendant Abarquez arrived and began taking pictures of the scene. (Compl. ¶ 53.) Plaintiff

19 complains that Arbarquez failed to "secure" Plaintiff's cell, which allowed other officers to enter and

20 trample the premises by planting false evidence. (Compl. ¶ 53.)

21        Defendant Adams arrived with a psych doctor. (Compl. ¶ 54.) Plaintiff complains that

22 Adams and the doctor saw Plaintiff's condition but did not transfer Plaintiff to a medical health care

23 unit for treatment for the burning sensation in his eyes. (Compl. ¶ 54.) Plaintiff told Adams that he

24 needed his personal eye medication to alleviate the pain but Adams walked away. (Compl. ¶ 54.)

25 Defendant Alexander also saw Plaintiff but refused to treat Plaintiff's condition. (Compl. ¶ 55.)

26        Hours later, Watson informed Plaintiff that he was being moved to the infirmary to be

27 examined by a physician. (Compl. ¶ 57.) Plaintiff was taken to the infirmary but was not seen by

28 a physician. (Compl. ¶ 58.) Plaintiff complains that he was tricked and placed in the prison's

4

1  suicide watch room.  (Compl. ¶ 58.)  Watson arrived later to give Plaintiff food served in plastic

2  bags.  (Compl. ¶ 59.)  Watson instructed Plaintiff to step to the back of the room, but Plaintiff

3  refused because he "was not going to allow no public official to feed him his dinner mixed in plastic

4  bags."  (Compl. ¶ 59.)

5        Later that night, Abarquez transferred Plaintiff to Corcoran State Prison.  (Compl. ¶ 61.)

6  Plaintiff was housed in the mental ward and placed on suicide watch for three days.  (Compl. ¶ 61.)

7        On June 6, 2005, Defendant John Doe #1 conducted a hearing for a rules violation report that

8  Plaintiff received as a result of the January 24, 2005 incident.  (Compl. ¶ 63.)  John Doe #1 found

9  Plaintiff guilty of battery on a peace officer.  (Compl. ¶ 64.)  Plaintiff was denied the right to call

10  witnesses and John Doe #1 told Plaintiff that he would find Plaintiff guilty no matter what evidence

11  Plaintiff presented.  (Compl. ¶ 64.)  Plaintiff also claims that he was denied the right to present

12  evidence that would have proven his innocence, such as the photographs taken of the scene.  (Compl.

13  ¶ 66.)

14        Plaintiff complained about the incident to Defendant Sullivan.  (Compl. ¶ 74.)  Plaintiff

15  complains that Sullivan "lobbied around the Defendants and condoned their acts of wrongdoing

16  employing the code of silence."  (Compl. ¶ 74.)

17  **III.**    **Discussion**

18        **A.**    **Plaintiff's First Cause of Action**

19        Plaintiff claims that Defendants subjected Plaintiff to cruel and unusual punishment in

20  violation of the Eighth Amendment.  The Eighth Amendment prohibits the imposition of cruel and

21  unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards,

22  humanity and decency.'"  Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop,

23  404 F.2d 571, 579 (8th Cir. 1968)).  A prison official violates the Eighth Amendment only when two

24  requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious",

25  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991),

26  and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind",

27  Id. (quoting Wilson, 501 U.S. at 298).  The objective requirement that the deprivation be

28  "sufficiently serious" is met where the prison official's act or omission results in the denial of "the

minimal civilized measure of life's necessities". Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303).  A prison official acts with deliberate indifference when he/she "knows of and disregards an excessive risk to inmate health or safety".  Id. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.

Plaintiff claims that his rights under the Eighth Amendment were violated by Defendants who attacked him and pepper sprayed him.  Where prison officials are accused of using excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320-321 (1986)).  Factors relevant to the analysis are the need for the application of force, the relationship between the need and the amount of force that was used and the extent of the injury inflicted.  Whitley, 475 U.S. at 321.  Other factors to be considered are the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.  Id.  The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary."  Id. at 319.  Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  Id. at 321-322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1970)).

Plaintiff claims that Defendants Watson and Chan pepper sprayed Plaintiff because Plaintiff complained about his property.  Defendant McGregor participated by opening Plaintiff's cell door three inches so that Watson could spray Plaintiff directly.  Defendants Blankenship, Crotty, Granillo, and Nelson attacked Plaintiff while Carrasco, Johnson, Watson, Chan, and Jobb stood nearby and did nothing to intervene.  Watson would later pepper spray Plaintiff again while Defendant Granillo

6

watched and did not intervene.  Plaintiff's complaint alleges that the pepper spray and attack was done without any legitimate penological reason.  Plaintiff states cognizable claims against Defendants Watson, Chan, McGregor, Blankenship, Crotty, Granillo, Nelson, Carrasco, Johnson, and Jobb for the use of excessive force in violation of Plaintiff's rights under the Eighth Amendment.

Plaintiff's allegations against the remaining Defendants, Sullivan, Adams, Alexander, and Abarquez,  are not sufficient to hold them liable under the Eighth Amendment.  Plaintiff does not allege any facts that plausibly suggest that Sullivan, Adams, Alexander, or Abarquez participated in the attack or could have prevented the attack from happening.

Plaintiff alleges that Defendant Sullivan is liable because he is the warden at CCI-Tehachapi and because he failed to prevent the attack from occurring.  Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of <u>respondeat</u> <u>superior</u> and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged.  <u>See</u> <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979); <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978), <u>cert.</u> <u>denied</u>, 442 U.S. 941 (1979).  To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff alleges that Sullivan failed to take reasonable steps to avoid an obvious risk of harm to Plaintiff, but there are no facts in Plaintiff's complaint that support the conclusion that the risk of harm was obvious to Sullivan.  Sullivan did not personally participate in the attack.  Plaintiff does not allege that Sullivan knew that the attack was going to occur before it happened.  Plaintiff vaguely alleges that Sullivan failed to ensure that his subordinates obeyed various laws, rules, and regulations.  However, Plaintiff fails to identify any specific policy that is itself a repudiation of

constitutional rights and was the moving force behind the attack.  Plaintiff's conclusory allegations about Sullivan's liability are not sufficient to support a cognizable claim under section 1983.

Plaintiff does not allege that Defendant Abarquez personally participated in the attack. Plaintiff alleges that Abarquez arrived after the attack occurred and took pictures.  Abarquez's actions cannot be said to have caused the attack because Abarquez was not involved until the attack had already occurred.  Similarly, Adams and Alexander did not arrive until after the attack occurred. Plaintiff fails to state any claims against Defendants Sullivan, Abarquez, Adams or Alexander for the use of excessive force in violation of Plaintiff's rights under the Eighth Amendment.

### B.  Plaintiff's Second Cause of Action

Plaintiff claims that Defendants violated Plaintiff's rights under the Eighth and Fourteenth Amendments through their deliberate indifference to Plaintiff's medical needs.  Plaintiff's claims will be analyzed under the Eighth Amendment and not the Fourteenth Amendment as the Eighth Amendment is the more explicit textual source of constitutional protection.  See Whitley v. Albers, 475 U.S. 312, 327 (1986) ("the Eighth Amendment . . . serves as the primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force is challenged as excessive and unjustified" and "in these circumstances the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause.")

"[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  Estelle, 429 U.S. at 105.  In order to state an Eighth Amendment claim based on deficient medical treatment, a plaintiff must show: (1) a serious medical need; and (2) a deliberately indifferent response by the defendant.  Conn v. City of Reno, 572 F.3d 1047, 1055 (9th Cir. 2009) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).  A serious medical need is shown by alleging that the failure to treat the plaintiff's condition could result in further significant injury, or the unnecessary and wanton infliction of pain.  Id.  A deliberately indifferent response by the defendant is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference.  Id.  In order to constitute deliberate indifference, there must be an objective risk of harm and the defendant must have subjective awareness of that harm. Id.

8

Plaintiff claims that Defendants Adams and Alexander ignored Plaintiff's requests for medical attention.  Plaintiff claims that he suffered unnecessary pain from the pepper spray because Adams and Alexander ignored Plaintiff's requests for decontamination and access to his eye medication.  Plaintiff states cognizable claims against Defendants Adams and Alexander for deliberate indifference to Plaintiff's medical needs.

Plaintiff claims that Defendants Watson and Granillo caused unnecessary pain and suffering by refusing to call medical assistance until Plaintiff agreed to be decontaminated with a garden hose. Plaintiff claims that Defendants did this to remove the evidence of misconduct.  Plaintiff states a cognizable claim against Defendants Watson and Granillo for deliberate indifference to Plaintiff's medical needs.

Plaintiff fails to allege any facts linking Defendant Sullivan to the denial of medical treatment.  Plaintiff does not allege any facts that show that Sullivan personally participated in the denial of Plaintiff's medical treatment.  Plaintiff does not allege any facts that suggest that Defendant Sullivan was aware of a substantial risk that Plaintiff would be denied medical treatment and had a reasonable opportunity to prevent a constitutional violation from occurring.  Finally, Plaintiff does not identify any policy that could be described as a "repudiation of constitutional rights" and was the moving force behind any constitutional violation.  Plaintiff's vague and conclusory allegations about Sullivan's failure to supervise his subordinates is not sufficient to support liability under section 1983.

### C.   Plaintiff's Third Cause of Action

Plaintiff claims that Defendants violated his right to be free from unlawful searches and seizures under the Fourth and Fourteenth Amendment.  Plaintiff claims that his rights were violated when he was extracted from his cell, stripped naked, placed in a holding cage, and sexually harassed. Plaintiff also complains that his rights were violated when Defendants entered his cell, tampered with his property and planted false evidence.  Plaintiff does not allege that the actions undertaken by Defendants were pursuant to a search.  Plaintiff alleges that Defendants harassed him for inquiring about his property, not to look for contraband.  Thus, there was no unlawful "search" when Plaintiff was extracted from his cell and stripped naked because Defendants were not "searching"

Plaintiff.  After Plaintiff was placed in the holding cage, correctional officers entered Plaintiff's cell and tampered with his property and planted false evidence.  Plaintiff does not provide any details as to how his property was tampered with or what false evidence was planted, but, again, there is no allegation that any search took place.  Further, Plaintiff has no legitimate expectation of privacy in his prison cell.  Hudson v. Palmer, 468 U.S. 517, 525-26 (1984).  Therefore, "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." Id. at 526.

Further, the Court finds that Plaintiff does not have a duplicative claim under the Fourth Amendment or Fourteenth Amendment for the use of excessive force that is already explicitly protected under the Eighth Amendment.  See Whitley v. Albers, 475 U.S. 312, 327 (1986) ("the Eighth Amendment . . . serves as the primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force is challenged as excessive and unjustified" and "in these circumstances the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause.")  Plaintiff's claims will be construed under the Eighth Amendment, and not under the Fourth or Fourteenth Amendment.

### D. **Plaintiff's Fourth Cause of Action**

Plaintiff claims that Defendants violated his rights under the Due Process Clause of the Fourteenth Amendment by failing to allow Plaintiff to present evidence at his disciplinary hearing. Plaintiff may have a cognizable claim for being denied adequate due process at his disciplinary hearing.  However, the Court finds that these claims must be brought in a separate action.

The procedural rules for bringing multiple claims in a single lawsuit are governed by Federal Rules of Civil Procedure 18 and 20.  A basic lawsuit is a single claim against a single defendant. Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant.  Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action."  However, unrelated claims that involve different defendants must be brought in separate lawsuits.  See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  This rule is not only

1    intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that prisoners pay

2    the required filing fees for their lawsuits and prevent prisoners from circumventing the three strikes

3    rule under the Prison Litigation Reform Act.[1]  28 U.S.C. § 1915(g).

4           In this case, Plaintiff's claims against Defendant John Doe #1 cannot be joined to this action

5    via Rule 18(a) because his claim is not against the same defendant.  Rule 20(a)(2) does not permit

6    joinder of Plaintiff's claim against John Doe #1 because it involves entirely separate law and facts.

7    Plaintiff's claim against John Doe #1 would involve in inquiry as to what procedural rights Plaintiff

8    is entitled to at his disciplinary hearing--an issue wholly distinct from his claims of excessive force,

9    and improper medical care.  Further, the relevant facts would be distinct because Plaintiff's claims

10   would involve a factual inquiry into the circumstances of the June 6, 2005 hearing, whereas

11   Plaintiff's other claims involve a factual inquiry into the circumstances of the November 9, 2004

12   incident.  None of the relevant facts that must be proven for Plaintiff's claims overlap.  Thus,

13   Plaintiff's due process claims against John Doe #1 will be dismissed without prejudice to Plaintiff's

14   ability to raise them in a separate action.

15          **E.     Plaintiff's Fifth Cause of Action**

16          Plaintiff claims that Defendants violated his rights under the Due Process Clause by

17   transferring Plaintiff to a medical facility for mental health treatment and placing Plaintiff on suicide

18   watch.  The Due Process Clause protects prisoners from being deprived of liberty without due

19   process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action

20   for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for

21   which the protection is sought.  Liberty interests may arise from the Due Process Clause itself or

22   from state law.  Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).  Liberty interests created by state law

23   are generally limited to freedom from restraint which "imposes atypical and significant hardship on

24   the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484

25   (1995).  In determining whether a hardship is sufficiently significant enough to warrant due process

26   protection, the Court looks to (1) whether the challenged condition mirrored those conditions

27   _____

28          [1]The Prison Litigation Reform Act allows prisoners to file complaints without prepayment of the filing fee
     unless they have previously filed three frivolous suits as a prisoner.  28 U.S.C. §1915(a),(g).

imposed upon inmates imposed upon inmates in administrative segregation and protective custody and is thus within the prison's discretionary authority to impose, (2) the duration of the condition and the degree of restraint imposed; and (3) whether the state's action will invariable affect the duration of the prisoner's sentence.  Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003).

Plaintiff's due process claim fails because Plaintiff provides no factual allegations to support his contention that he has a protected liberty interest in not being sent to a medical facility for mental health treatment, or a protected liberty interest in not being placed on suicide watch.  Plaintiff does not allege what the conditions  were in the medical facility or in being placed on suicide watch.  Thus, it is unclear how being placed in the medical facility or being placed on suicide watch was an atypical and significant hardship when compared to the ordinary incidents of prison life.  In other words, it is unclear how being placed in the medical facility was a serious deprivation of Plaintiff's liberty.  Plaintiff fails to state a cognizable claim for the violation of his due process rights.

**F.**     **Plaintiff's Sixth Cause of Action**

Plaintiff claims that Defendants violated Plaintiff's rights under the First Amendment "by depriving Plaintiff of the equal protection of the laws, equal privileges, immunities and rights of a citizen of the united states, under the laws, and conspired to 'murder' plaintiff."  (Compl. ¶ 119.) Plaintiff complains that Defendants made false reports about the incident that exposed Plaintiff to possible criminal prosecution.  Although Plaintiff's sixth cause of action mentions his equal protection, equal protection of the laws is a right guaranteed by the Fourteenth Amendment, not the First Amendment.  The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally discriminated against on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.2005).  If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational

12

relationship to a legitimate state purpose.  Village of Willowbrook v. Olech, 528 U.S. 562, 564

(2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development

Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309

F.3d 662, 679 (9th Cir.2002).  To state an equal protection claim under this theory, a plaintiff must

allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally

treated differently from others similarly situated; and (3) there is no rational basis for the difference

in treatment.  Village of Willowbrook, 528 U.S. at 564.

Plaintiff does not allege that he was treated differently on account of his membership in a

protected class or any identifiable class.  There are no allegations of discriminatory treatment in

Plaintiff's complaint.  Therefore, Plaintiff fails to state any claims for the violation of the Equal

Protection Clause of the Fourteenth Amendment.

As to Plaintiff's rights under the First Amendment, Plaintiff does allege that he was retaliated

against because he was known to write inmate complaints.  In the prison context, allegations of

retaliation against a prisoner's First Amendment rights to speech or to petition the government may

support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also

Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th

Cir. 1995).  "[A] viable claim of First Amendment retaliation entails five basic elements:  (1) An

assertion that a state actor took some adverse action against an inmate (2) because of (3) that

prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  An allegation of retaliation against a

prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under

section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff alleges that "[a]ll Defendants in retaliation of Plaintiff filing prison grievances and

citizen complaints against the prison guards, conspired together using deceptive methods,

implemented a plot to "murder" Plaintiff, intentionally disseminate false and misleading information

as a protective measure to obscure their felonious actions and intentions."  (Compl. ¶ 73.)  Plaintiff

fails to offer sufficient factual allegations to support a claim for retaliation.  Plaintiff's allegations

1    are conclusory and unsupported by factual enhancement that infer more than a mere possibility of

2    misconduct.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  The facts allege suggest that

3    the incident arose from Plaintiff's insistence on speaking with higher authorities about his property.

4    There are no facts that suggest the incident was motivated by animosity toward Plaintiff's exercise

5    of his First Amendment rights.  This holds particularly true for individuals such as Defendant

6    Sullivan, who was not personally involved with the incident and there is no clear allegation of

7    adverse action by Sullivan against Plaintiff, yet Plaintiff tenders the naked assertion that Sullivan

8    was retaliating against Plaintiff for filing grievances.  Plaintiff's blanket assertion of the group's

9    retaliatory motives, unsupported by any factual explanation for his suspicions, is not sufficient to

10   hold the entire group liable for operating against Plaintiff.  Plaintiff fails to state any cognizable

11   claims against Defendants for retaliation against Plaintiff's exercise of his First Amendment rights.

12   **IV.    Conclusion and Order**

13          Plaintiff's complaint states cognizable claims against Defendants Watson, Chan, McGregor,

14   Blankenship, Crotty, Granillo, Nelson, Carrasco, Johnson, Jobb, Adams and Alexander for the

15   violation of Plaintiff's rights under the Eighth Amendment.  Plaintiff's complaint fails to state claims

16   against any other defendants.  The Court will provide Plaintiff with the opportunity to file an

17   amended complaint curing the deficiencies identified by the Court in this order.  Noll v. Carlson, 809

18   F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new,

19   unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no

20   "buckshot" complaints).

21          If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only

22   on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and

23   the Court will issue a recommendation for dismissal of the other claims and defendants, and will

24   forward Plaintiff 12 (twelve) summonses and 12 (twelve) USM-285 forms for completion and return.

25   Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of

26   process.

27          If Plaintiff opts to amend, his amended complaint should be brief.  Fed. R. Civ. P. 8(a).

28   Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's

constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  The amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.  In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1.    The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.    Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

a.    File an amended complaint curing the deficiencies identified by the Court in this order, or

///

        b.      Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Watson, Chan, McGregor, Blankenship, Crotty, Granillo, Nelson, Carrasco, Johnson, Jobb, Adams and Alexander for the violation of Plaintiff's rights under the Eighth Amendment; and

3.      If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:**   __**April 5, 2010**__   _____**/s/ Gary S. Austin**_____
UNITED STATES MAGISTRATE JUDGE