# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE E. JACOBS, IV, | CASE NO. 1:05-cv-01625-SKO PC |
| Plaintiff, | ORDER DISMISSING CERTAIN CLAIMS |
| v. | (Doc. 29) |
| W.J. SULLIVAN, et al., | |
| Defendants. | |

Plaintiff George E. Jacobs, IV ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is currently incarcerated at the California State Prison in Corcoran, California ("CSP-Corcoran"). However, the events described in Plaintiff's complaint took place while he was incarcerated at the California Correctional Institution in Tehachapi, California ("CCI-Tehachapi"). Plaintiff is suing under Section 1983 for the violation of his rights under the Fourth, Eighth, and Fourteenth Amendments. Plaintiff names W.J. Sullivan (warden), D. Watson (correctional sergeant), P. Chan (correctional officer), S. McGregor (correctional officer), D. Jobb (correctional officer), D. Blankenship (correctional officer), M. Crotty (correctional officer), C. Nelson (correctional officer), E. Granillo (correctional officer), M. Carrasco (correctional captain), R. Johnson (correctional lieutenant), John Doe #1 (senior hearing official), Ms. Alexander (registered nurse), and J. Adams (medical technical assistant) as defendants ("Defendants"). Plaintiff has consented to jurisdiction by U.S. Magistrate Judge. (Doc. #3.)

///

For the reasons set forth below, the Court finds that Plaintiff's complaint states some cognizable claims. The Court will dismiss the non-cognizable claims, without leave to amend, for failure to state a claim and this action shall proceed on the claims found to be cognizable in this order.

**I.     Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

///

II. **Background**

    A. **Procedural Background**

This action was transferred from the District Court for the Central District of California on December 22, 2005. (Doc. #1.) On February 17, 2006, Plaintiff's complaint was dismissed with leave to amend. (Doc. #4.) The Court noted that Plaintiff's original complaint consisted only of a caption page and did not contain any factual allegations. Plaintiff filed his first amended complaint on March 28, 2006. (Doc. #6.) On May 1, 2009, the Court screened Plaintiff's first amended complaint and dismissed it because it was illegible. (Doc. #21.) Plaintiff filed a second amended complaint on June 8, 2009. (Doc. #25.) On April 5, 2010, the Court screened Plaintiff's second amended complaint and found that it stated some cognizable claims for relief. (Doc. #27.) The Court ordered Plaintiff to either file an amended complaint or notify the Court of his willingness to proceed only on the claims found to be cognizable. Plaintiff filed his third amended complaint on May 5, 2010. (Doc. #29.) This action proceeds on Plaintiff's third amended complaint.

    B. **Factual Background**

Plaintiff alleges that he was transferred to CCI-Tehachapi from Lancaster State Prison. Plaintiff complains that the staff at CCI-Tehachapi immediately acted hostile toward Plaintiff because the staff at Lancaster State Prison informed them that Plaintiff was a "staff assaulter" and filed administrative grievances. (Am. Compl. ¶ 22, ECF No. 29.)

Plaintiff claims that Defendant D. Watson withheld Plaintiff's personal and legal property because of Plaintiff's reputation as a staff assaulter and grievance filer.[1] Plaintiff filed a grievance about his property, but did not receive his property. Plaintiff told Defendant D. Blankenship that he wanted to speak with higher authorities. Blankenship told Plaintiff that "today is not a good day to be doing this because the sergeant (Defendant D. Watson) is not to be messed with!" (Am. Compl. ¶ 25, ECF No. 29.)

///

---

[1] Although Plaintiff's complaint contains multiple references to retaliation against his First Amendment right to file grievances against the government, Plaintiff does not raise any retaliation claims. Plaintiff explicitly sets forth his claims in five separately enumerated causes of action; none of the causes of action refer to the retaliation against his First Amendment rights.

1   Later, Watson approached Plaintiff and berated him. Plaintiff asked to speak with a higher
2 authority again, but Watson began making comments about Plaintiff "wanting to hurt himself" and
3 began spraying Plaintiff with pepper spray. (Am. Compl. ¶ 27, ECF No. 29.) Defendant P. Chan
4 also joined in and sprayed Plaintiff. Watson asked Plaintiff if he wanted to come out of the cell, but
5 when Plaintiff approached the door, he was bombarded with more pepper spray. Defendant S.
6 McGregor then opened the door from the control tower to allow Watson to directly spray Plaintiff.
7 Watson asked Plaintiff if he was ready to exit and the cell door suddenly opened completely and a
8 crowd of guards rushed in and attacked Plaintiff. Plaintiff claims that Defendants M. Carrasco, R.
9 Johnson, D. Jobb, Watson, and Chan were standing at the entrance of Plaintiff's cell watching
10 Defendants D. Blankenship, M. Crotty, E. Granillo, and C. Nelson "assault and batter Plaintiff in the
11 form of using unnecessary use of force excessively." (Am. Compl. ¶ 33, ECF No. 29.)

12   Plaintiff was then shackled and taken to a cell outside the building. Plaintiff's clothes were
13 cut off and he was sprayed with cold water. Plaintiff claims that the weather was particularly cold
14 because it was in the middle of winter. Plaintiff was verbally abused by Watson while he was being
15 hosed down.

16   Watson and Granillo then escorted Plaintiff to the dining hall and placed him in a holding
17 cage and strip searched him, leaving him naked. Watson took out his pepper spray and shook it up
18 while making sexually harassing remarks. Watson left and returned later to tell Plaintiff that his
19 officers were injured and weapons were found in Plaintiff's cell. Plaintiff was then sprayed with
20 pepper spray again. Watson then falsely reported that Plaintiff spat on Watson's face to justify the
21 use of pepper spray. Plaintiff claims that Granillo was present during the entire sequence of events
22 but failed to intervene.

23   Plaintiff alleges that Watson refused to summon medical attention unless Plaintiff agreed to
24 exit the holding cage and allow Watson to wash off all the pepper spray to eliminate any evidence
25 of misconduct. When Plaintiff pled for medical assistance, Watson went outside to get the hose and
26 sprayed Plaintiff with water again.

27   Plaintiff claims that D. Abarquez (not named as a defendant) then took photos of Plaintiff.
28 Plaintiff complains that Abarquez was responsible for collecting evidence of the incident but allowed

4

1  Plaintiff's cell to remain unsecured for over an hour, thereby allowing the other Defendants to enter
2  and exit and plant false evidence in the cell.
3       Plaintiff was later seen by Defendant J. Adams and a "psych doctor." (Am. Compl. ¶ 46,
4  ECF No. 29.) Plaintiff complains that neither person did anything to have Plaintiff transported to
5  the medical health care unit for treatment. Plaintiff complained about the burning sensation in his
6  eyes and on his body, and told J. Adams that he was on eye medication and needed his medication
7  to alleviate the pain. Adams ignored Plaintiff and walked away. Plaintiff also complains that
8  Defendant Alexander came by, but refused to offer any medical treatment.
9       Hours later, Watson told Plaintiff that he was being moved to the infirmary to be examined
10 by a physician. However, Plaintiff alleges that he was tricked and was not seen by a physician.
11 Plaintiff alleges that he was placed on suicide watch "in direct violation of his civil liberties." (Am.
12 Compl. ¶ 50, ECF No. 29.) Plaintiff complains that while he was on suicide watch, he was "not
13 provided with any of life's bare minimum necessities" because he was fed via "two plastic bags
14 filled with loose food." (Am. Compl. ¶ 51.)
15      Later, D. Abarquez transferred Plaintiff to CSP-Corcoran. Plaintiff was told that he was
16 being transferred to receive medical care, but was instead placed on suicide watch at CSP-Corcoran.
17 Plaintiff claims that the entire incident was a conspiracy to place Plaintiff on suicide watch in
18 response to Plaintiff's exercise of his right to file administrative grievances complaining about the
19 conduct of prison guards.
20      Plaintiff claims that Defendant John Doe #1 is a senior hearing official who served as the
21 adjudicator for the rules violation report ("RVR") that Plaintiff received as a result of the pepper
22 spray incident. John Doe #1 found Plaintiff guilty of battery on a peace officer with a deadly
23 weapon. Plaintiff claims that he was denied the right to call the defendants and all other pertinent
24 eye witnesses. Plaintiff also claims he was denied the right to present physical and documentary
25 evidence. Plaintiff was told that he would be found guilty regardless of any evidence that Plaintiff
26 presented in his defense.
27 ///
28 ///

1  **III.    Discussion**

2     **A.    First Cause of Action - Use of Excessive Force**

3   Plaintiff alleges that Defendants W.J. Sullivan, D. Watson, P. Chan, S. McGregor, M. Carrasco, R. Johnson, D. Jobb, D. Blankenship, M. Crotty, C. Nelson, and E. Granillo violated Plaintiff's rights under the Eighth Amendment by attacking Plaintiff and maliciously pepper-spraying Plaintiff.

  The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)).  A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

  The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities."  Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).   The subjective "sufficiently culpable state of mind" requirement is met when a prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety."  Id. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.

  Where prison officials are accused of using excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320-321 (1986)).  Factors relevant to the analysis are the need for the application of force, the relationship between the need and the amount of force that was used and the extent of the injury inflicted. Whitley, 475 U.S. at 321.  Other factors to be considered are the

extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. Id. The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary." Id. at 319. Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 321-322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1970)).

extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. Id. The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary." Id. at 319. Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 321-322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1970)).

      Plaintiff claims that Defendants Watson and Chan pepper sprayed Plaintiff in a malicious manner. Plaintiff alleges that Defendant McGregor participated in the first pepper spray incident by opening the door for Watson so he could administer the pepper spray directly at Plaintiff. Plaintiff alleges that Defendants D. Blankenship, M. Crotty, E. Granillo, and C. Nelson attacked Plaintiff while Defendants M. Carrasco, R. Johnson, D. Jobb, Watson, and Chan stood nearby and observed without making any effort to intervene. Plaintiff was later hosed down in the cold and pepper sprayed again by Watson in a malicious manner. Plaintiff alleges that Defendant Granillo stood by and observed without making any effort to intervene. Plaintiff states cognizable claims against Defendants Watson, Chan, McGregor, Blankenship, Crotty, Granillo, Nelson, Carrasco, Johnson, and Jobb for the violation of Plaintiff's Eighth Amendment rights through the malicious and sadistic use of excessive force.

      Plaintiff attempts to hold Defendant W.J. Sullivan liable for violating Plaintiff's Eighth Amendment rights. However, Plaintiff has not alleged any facts that plausibly support the conclusion that Sullivan was involved with the use of excessive force. Supervisory personnel are generally not liable under Section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under Section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory

7

defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Sullivan was the warden of CCI-Tehachapi at the time of the events described in Plaintiff's complaint. However, Plaintiff does not allege that Sullivan was present during any of the events and does not allege that Sullivan ordered any of his subordinates to attack or retaliate against Plaintiff. Plaintiff vaguely alleges that Defendants attacked Plaintiff "based on procedures and policies promulgated and implemented by warden W.J. Sullivan directly, which resulted in Plaintiff being injured." (Am. Compl. ¶ 63, ECF No. 29.) Plaintiff claims that the attack was "a result of W.J. Sullivan's promulgation and implementation of Tehachapi's operational procedures and policies for removing prisoners from assigned cells, using force, and rendering medical treatment and the placement of prisoners on suicide 'watch' repudiated[sic] Plaintiff's constitutional rights." (Am. Compl. ¶ 63, ECF No. 29.)

Plaintiff's vague factual allegations fail to set forth any plausible theory regarding how Sullivan's policies and procedures caused the injuries described by Plaintiff. Plaintiff fails to identify the relevant policies and procedures or how they could be characterized as a repudiation of Plaintiff's constitutional rights. Plaintiff cannot state a claim against Sullivan by simply reciting boilerplate legal standards and setting forth unsupported legal and factual conclusions. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief). Plaintiff fails to state a claim against Defendant Sullivan.

**B.     Second Cause of Action - Deliberate Indifference to Plaintiff's Medical Needs**

Plaintiff claims that Defendants W.J. Sullivan, J. Adams, Ms. Alexander, D. Watson, and E. Granillo violated Plaintiff's Eighth Amendment rights through their deliberate indifference toward Plaintiff's medical needs. "[D]eliberate indifference to a prisoner's serious illness or injury states

a cause of action under § 1983." Estelle, 429 U.S. at 105. In order to state an Eighth Amendment claim based on deficient medical treatment, a plaintiff must show: (1) a serious medical need; and (2) a deliberately indifferent response by the defendant. Conn v. City of Reno, 572 F.3d 1047, 1055 (9th Cir. 2009) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). A serious medical need is shown by alleging that the failure to treat the plaintiff's condition could result in further significant injury, or the unnecessary and wanton infliction of pain. Id. A deliberately indifferent response by the defendant is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Id. In order to constitute deliberate indifference, there must be an objective risk of harm and the defendant must have subjective awareness of that harm. Id.

Plaintiff alleges that Defendants Adams, Alexander, Watson, and Granillo exhibited deliberate indifference toward Plaintiff's medical needs by ignoring Plaintiff's requests for decontamination from the effects of the pepper spray. Plaintiff also alleges that Adams, Alexander, Watson, and Granillo ignored Plaintiff's requests for access to his eye medication to alleviate the pain from the pepper spray. The failure to decontaminate prisoners or otherwise provide medical treatment for prisoners exposed to pepper spray can support a claim for the violation of the Eighth Amendment. Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002). Thus, Plaintiff states a cognizable claim against Defendants Adams, Alexander, Watson, and Granillo.

Plaintiff's allegations against Defendant Sullivan are not sufficient to support a claim for relief. Plaintiff has not alleged any facts that plausibly support the conclusion that Sullivan participated in the denial of Plaintiff's requests for decontamination and medical treatment and Plaintiff's threadbare recitals of the elements of a cause of action are not sufficient to state a claim against Defendant Sullivan. See discussion supra Part III.A.

    **C.**    **Third Cause of Action - Fourth and Fourteenth Amendment Right to be Free from Unreasonable Searches and Seizures**

Plaintiff claims that his right to be free from unreasonable searches and seizures was violated when Defendants extracted Plaintiff from his cell, strip-searched him, and searched him for contraband. Plaintiff claims that the search was unconstitutional because he was sexually harassed

and degraded throughout the entire search process. The factual basis for Plaintiff's Fourth and Fourteenth Amendment claims overlap with the factual basis of his Eighth Amendment claims.

"[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted). The Court finds that Plaintiff does not have a Fourteenth Amendment Due Process claim premised on the harassing searches because the Fourth and Eighth Amendments provide a more explicit textual source of constitutional protection for Defendants' behavior.

The issue to be determined is whether Plaintiff's claim should be analyzed under the deliberate indifference standard of the Eighth Amendment or the objective reasonableness standard of the Fourth Amendment, or whether Plaintiff has duplicative claims under both theories and both standards should apply.

The Court finds that Plaintiff's claims may proceed only under the Eighth Amendment. Under the Fourth Amendment, "[s]earches of prisoners must be reasonable to be constitutional." Nunez v. Duncan, 591 F.3d 1217, 1227 (9th Cir. 2010). Under the standard set forth in Turner v. Safley, 482 U.S. 78, 89 (1987), a prison regulation is valid if it is reasonably related to legitimate penological interests. Whether a particular search of a prisoner is reasonable is determined by balancing the need for the particular search against the invasion of personal rights that the search entails. Id. (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)). When analyzing the reasonableness of a search, the Court must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. Id. (quoting Bell, 441 U.S. at 559).

In Nunez, the Ninth Circuit considered the Fourth Amendment claim brought by a prisoner challenging the manner in which he was strip-searched. The plaintiff in Nunez ("Nunez") alleged that he was subjected to a strip search while returning from a work assignment. Nunez alleged that the defendant correctional officers randomly selected which prisoners would be strip-searched by conducting a raffle. Nunez "won" the raffle and was then subjected to a strip search in the men's

bathroom. The Ninth Circuit found that the regulations authorizing the search were valid because they were "reasonably related to legitimate penological interests." Id. at 1227-28. The Ninth Circuit then discussed whether the manner in which the search was conducted could violate the Fourth Amendment because the search selection process was done in a harassing manner. The Ninth Circuit concluded that whether the correctional officer targeted defendant for the search based on non-penological reasons – i.e., the officer's subjective intent – is irrelevant for the purposes of determining the reasonableness of the search under the Fourth Amendment, as long as the circumstances, viewed objectively, justify the action. Id. at 1228.

The Court finds that Plaintiff's Fourth Amendment claims fail to state a claim for the same reasons set forth in Nunez. Plaintiff challenges the reasonableness of his strip search based on the fact that Plaintiff was targeted by Defendants and the search was conducted in a harassing manner. However, Plaintiff also alleges that the search itself was done of the purpose of searching for contraband. "Controlling contraband within a prison is a legitimate penological interest." Id. at 1228. Thus, the search itself was reasonably related to a legitimate penological interest. Plaintiff is challenging the search because it was done for the purpose of harassing Plaintiff and conducted in a cruel and unusual manner. Such allegations are irrelevant for analyzing the reasonableness of the search in the Fourth Amendment context, though they are sufficient to state a claim under the Eighth Amendment. Plaintiff's claims are therefore more appropriately analyzed under the Eighth Amendment. Accordingly, Plaintiff's Fourth and Fourteenth Amendment claims will be dismissed.

### D.     Fourth and Fifth Causes of Action - Due Process and Equal Protection

#### 1.     Due Process

Plaintiff claims that Defendant John Doe #1 violated Plaintiff's due process rights by holding an impartial disciplinary hearing. Specifically, Plaintiff claims that John Doe #1 deprived Plaintiff of the opportunity to present evidence and examine witnesses. Plaintiff also alleges that he was not "provided with all reports and documented evidence within 24 hours of the hearing." (Am. Compl. ¶91, ECF No. 29.) Plaintiff further claims that his due process rights were violated when he was placed on suicide watch.

The Due Process Clause protects prisoners from deprivation of liberty without due process

of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). To state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In determining whether a hardship is sufficiently significant enough to warrant due process protection, the Court looks to: (1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody and is thus within the prison's discretionary authority to impose, (2) the duration of the condition and the degree of restraint imposed, and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process is satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).

Whether Plaintiff states a cognizable due process claim depends on whether Plaintiff was deprived of a liberty interest protected by the Due Process Clause. Although Plaintiff has alleged that he was denied various procedural safeguards during his disciplinary hearing, those safeguards are not constitutionally guaranteed unless the disciplinary hearing implicated a protected liberty

interest. In other words, Plaintiff is not entitled to the five minimum Wolff requirements unless the punishment imposed from the disciplinary hearing constituted an atypical and significant hardship.

Plaintiff alleges that he suffered emotional distress and depression as a result of the final adjudication from the disciplinary hearing. Plaintiff also alleges that he was placed in the Security Housing Unit. However, Plaintiff does not describe the conditions in the Security Housing Unit or allege how long he was placed in the Security Housing Unit. The Court notes that Plaintiff alleged that he was placed on suicide watch shortly after the pepper spray incident and alleges that he was transferred from suicide watch to CSP-Corcoran soon thereafter. Thus, it is unclear when Plaintiff's disciplinary hearing occurred or when Plaintiff was placed in the Security Housing Unit. Plaintiff alleges that he was transferred directly from suicide watch to CSP-Corcoran. It is unclear whether Plaintiff's time on suicide watch and Plaintiff's time in the Security Housing Unit overlapped, or whether suicide watch and the Security Housing Unit refer to the same thing. If the latter is true, it is unclear how Plaintiff was placed in the Security Housing Unit as a result of the disciplinary hearing rather than Defendants' erroneous belief that Plaintiff was suicidal.

In either case, Plaintiff has not alleged any facts that support the conclusion that the Security Housing Unit or suicide watch imposed an atypical and a significant hardship on Plaintiff. The only allegations with respect to the conditions in the Security Housing Unit/suicide watch are the allegations that correctional officers fed Plaintiff via plastic bags filled with loose food. However, the Court finds that being fed via plastic bags is not an atypical or significant hardship within the meaning of the Fourteenth Amendment. Accordingly, Plaintiff fails to state any cognizable due process claims based on his placement on suicide watch or in the Security Housing Unit.

Plaintiff also claims that his due process rights were violated when he was transferred to CSP-Corcoran. Plaintiff claims that he was deceived because he was told that he was being transferred for the purpose of receiving medical care, but he did not receive any medical care at CSP-Corcoran. Plaintiff has no protected liberty interest in being incarcerated at the institution of his choice. Meachum v. Fano, 427 U.S. 215, 228-29 (1976). Plaintiff has not alleged any facts to support the conclusion that the transfer to CSP-Corcoran imposed an atypical and significant hardship on Plaintiff. Accordingly, Plaintiff has no due process claim based on his transfer to CSP-

Corcoran.

### 2. Equal Protection

Plaintiff claims that he was denied equal protection under the law because he was singled out for harassment by prison officials. Plaintiff claims that since no other inmates were harassed, he was not treated in the same manner as other similarly situated prisoners.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally discriminated against on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.2005). If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir.2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564.

Plaintiff has not alleged that he was a member of an identifiable class. Further, Plaintiff has not alleged that he was treated differently because he was a member of any identifiable class. Plaintiff has not alleged that Defendants discriminated against him. Accordingly, Plaintiff has no claim under the Equal Protection Clause.

### E. No Leave to Amend

The Court is generally required to provide Plaintiff with notice of the deficiencies in his

claims and an opportunity to amend his complaint to cure those deficiencies. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2007) (recognizing longstanding rule that leave to amend should be granted even if no request to amend was made unless the court determines that the pleading could not possibly be cured by the allegation of other facts); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment).  However, the Court informed Plaintiff of the deficiencies in his claims in the Court's previous screening order and Plaintiff has failed to amend his complaint in a manner that meaningfully addresses those deficiencies.  Accordingly, the Court will dismiss Plaintiff's non-cognizable claims without leave to amend and this action will proceed on the claims found to be cognizable in this order. See Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)(dismissal with prejudice upheld where court had instructed plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

**IV.    Conclusion and Order**

Plaintiff's complaint states cognizable claims against Defendants Watson, Chan, McGregor, Blankenship, Crotty, Granillo, Nelson, Carrasco, Johnson, and Jobb for the use of excessive force in violation of the Eighth Amendment.  Plaintiff's complaint also states cognizable claims against Defendants Adams, Alexander, Watson, and Granillo for deliberate indifference toward Plaintiff's serious need for medical care in violation of the Eighth Amendment. However, Plaintiff's complaint does not state any other cognizable claims. Plaintiff was provided with notice of the deficiencies in his non-cognizable claims and the opportunity to amend. Plaintiff's third amended complaint failed to remedy the deficiencies in his non-cognizable claims. The Court finds that the deficiencies in Plaintiff's non-cognizable claims are not curable by further amendment of his complaint.

Accordingly, it is HEREBY ORDERED that:

1. This action shall proceed on Plaintiff's third amended complaint, filed on May 5, 2010, against Defendants Watson, Chan, McGregor, Blankenship, Crotty, Granillo, Nelson, Carrasco, Johnson, Jobb, Adams, and Alexander for the violation of Plaintiff's rights under the Eighth Amendment; and

///

2. Plaintiff's remaining claims are DISMISSED for failure to state a claim.

IT IS SO ORDERED.

**Dated:   October 19, 2010**                         /s/ Sheila K. Oberto
                                                                             UNITED STATES MAGISTRATE JUDGE