1
2
3
4
5
6
7
8                           **UNITED STATES DISTRICT COURT**

9                           **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| GEORGE E. JACOBS IV, | ) Case No.: 1:05-cv-01625-SAB (PC) |
| Plaintiff, | ) |
| | ) ORDER REGARDING PARTIES' MOTIONS |
| v. | ) IN LIMINE |
| ALEXANDER, et al., | ) [ECF Nos. 200 & 202] |
| Defendants. | ) |
| | ) |

Plaintiff George Jacobs is appearing and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is represented by Kenneth Lee, Esq.

This action is proceeding against Defendants Blankenship, Carrasco, Chan, Granillo, Jobb, Johnson, McGregor, Nelson, and Watson for excessive force and against Defendants Adams, Alexander, Granillo, and Watson for deliberate indifference to Plaintiff's serious medical needs, arising from a cell extraction on January 24, 2005, at the California Correctional Institution (CCI).

The matter is set for jury trial before the undersigned on September 27, 2016, at 8:30 a.m.

On July 29, 2016, Plaintiff and Defendants filed motions in limine.  (ECF Nos. 200 & 202.) Both Plaintiff and Defendants filed oppositions on August 12, 2016.  (ECF Nos. 212 & 214.)

On August 19, 2016, the Court held a telephonic motions in limine hearing, and counsel Christina Avedissian and Kenneth Lee appeared on behalf of Plaintiff and Diana Equivel and Lucas Hennes appeared on behalf of Defendants.

# I.

## LEGAL STANDARD

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009).  A party may use a motion in limine to exclude inadmissible or prejudicial evidence before it is actually introduced at trial.  See Luce v. United States, 469 U.S. 38, 40 n.2 (1984).  "[A] motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Jonasson v. Lutheran Child and Family Services, 115 F.3d 436,440 (7th Cir. 1997).  A motion in limine allows the parties to resolve evidentiary disputes before trial and avoids potentially prejudicial evidence being presented in front of the jury, thereby relieving the trial judge from the formidable task of neutralizing the taint of prejudicial evidence.  Brodit v. Cambra, 350 F.3d 985, 1004-05 (9th Cir. 2003).

Motions in limine that exclude broad categories of evidence are disfavored, and such issues are better dealt with during trial as the admissibility of evidence arises.  Sperberg v. Goodyear Tire & Rubber, Co., 519 F.2d 708, 712 (6th Cir. 1975).  Additionally, some evidentiary issues are not accurately and efficiently evaluated by the trial judge in a motion in limine and it is necessary to defer ruling until during trial when the trial judge can better estimate the impact of the evidence on the jury. Jonasson v. Lutheran Child and Family Services, 115 F.3d 436, 440 (7th Cir. 1997).

# II.

## MOTIONS IN LIMINE

### A.      Plaintiff's Motions in Limine

Plaintiff seeks to exclude: (1) the length of Plaintiff's criminal sentence; (2) Plaintiff's prison disciplinary history; (3) Plaintiff's mental health records; (4) evidence of the makeshift weapons purportedly found in Plaintiff's cell after the cell extraction; (5) evidence of injuries sustained by officers Blankenship and Granillo during the extraction process; and (6) evidence of Plaintiff's prior and ongoing lawsuits.

///

///

2

1.     Length of Plaintiff's Criminal Sentence

Plaintiff seeks to exclude the length of Plaintiff's criminal sentence on the grounds that it is irrelevant, any probative value is outweighed by the prejudicial nature, impermissible character evidence, and such evidence would be cumulative.

First, Plaintiff contends the length of his criminal sentence is irrelevant to whether his constitutional rights were violated during this incident, and his sentence does not tend to make the existence of any material fact "more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). Second, Plaintiff contends even assuming the length of his criminal sentence was relevant, any probative value is substantially outweighed by its prejudicial nature. Plaintiff reasons that introduction of the length of Plaintiff's sentence is simply a back-door way for Defendants to signal to the jury that Plaintiff was convicted of a particularly serious and heinous crime. In instances, such as here, where the case relies in part on credibility of Plaintiff's testimony, the risk of a decision being made on an improper basis must be carefully considered. Third, the length of Plaintiff's sentences constitutes impermissible character evidence. Fed. R. Evid. 404(b)(1). Defendants have failed to articulate a non-character purpose for the use of this evidence. Offering this evidence would risk the jury unfairly concluding that Plaintiff cannot be trusted because he is someone who committed a very serious crime. Fourth, presentation of Plaintiff's sentence would be cumulative since the jury will already be aware that Plaintiff has been incarcerated since at least 2005. Fed. R. Evid. 403.

Defendants submit that witness credibility will be the central issue during trial that the jury must decide. Plaintiff is serving a life sentence. As a result of his 1995 conviction for murder, Plaintiff was sentenced to twenty-five years to life. (Ex. E, Abstract of J. at 1, ECF No. 200.) In December 2005, Plaintiff was convicted of violently assaulting a correctional officer. (Abstract of J. at 2-3.) In 2007, Plaintiff pled guilty to assaulting a peace officer and being in possession of a weapon. (Abstract of J. at 6-7.) In 2008, he was convicted of multiple counts of assaulting a peace officer and assault with a deadly weapon. (Abstract of J. at 8-9.) Defendants do not seek to introduce evidence or facts of Plaintiff's specific crimes (unless the incident giving rise to the conviction is admissible under Federal Rule of Evidence 404(b)(2)). Rather, Defendants intend to elicit testimony about the dates of his convictions and length of his incarceration. Defendants reason that Plaintiff has

no incentive to tell the truth, and he will suffer little or no consequence if he perjures himself at trial since he is already in prison for life.

Federal Rule of Evidence 609(a)(1)(A) provides that evidence of a conviction for a crime punishable for more than one year is admissible, subject to Rule 403, in a civil case to attack a witness's character for truthfulness.  Fed. R. Evid. 609(a)(1)(A).  Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or release from confinement from it, which is later.  Fed. R. Evid. 609(b).

**Ruling:**  Plaintiff's motion in limine is GRANTED.  Defendants may reference that Plaintiff was convicted of a felony and is serving a substantial state criminal sentence but may not reference the nature of the crime for which Plaintiff was convicted or the actual length of his sentence.

2.    Plaintiff's Prior Disciplinary History

Plaintiff seeks to exclude his prior disciplinary history on the grounds that it is irrelevant, any probative value is outweighed by the prejudicial nature, and impermissible character evidence.

Plaintiff reasons that these past disciplinary records offer no probative value for determining whether Defendants employed excessive force or displayed deliberate indifference in this incident. Defendants do not assert that they had any knowledge of Plaintiff's disciplinary history at the time of the incident, or that their actions on that day were influenced by knowledge of his disciplinary record. To the contrary, Defendants Watson and Blankenship testified that they met Plaintiff for the first time on the day of the incident and had no prior information about him at that time.  (See Declaration of Kenneth Lee, Ex. 1, Watson Depo. Tr. At 20:5-15 ["Q: Do you remember when you first met Mr. Jacobs[?]…A: It was that day….Q: Did you know anything about Mr. Jacobs before you met him that day? A: No I didn't."]; Ex. 2, Blankenship Depo. Tr. At 19:10-11 [Q: And when did you first meet Mr. Jacobs? A: On the morning of the incident in question."]; Blankenship Depo. Tr. At 78:7-9 ["So that was my first day in that housing unit.  We had no time to develop a relationship with this inmate [Mr. Jacobs] yet.  This is our first dealing with him."]).

Plaintiff's prison disciplinary history is inadmissible as character evidence.  Fed. R. Evid. 404(b).  Finally, even if Plaintiff's disciplinary history was admissible under Rule 404(b), it should be excluded because it is highly prejudicial.  Fed. R. Evid. 403.  Any relevant is far outweighed by its

prejudicial effect, particularly where the incidents do not reveal a specific "plan, scheme, or similarity connecting them to the particular conduct" at issue in this case.

Defendants do not oppose Plaintiff's motion to exclude his finding of "guilty" of disciplinary actions, including the one arising from the January 24, 2005 incident.  However, Defendants oppose the motion to the extent it will prejudice them from eliciting testimony or introducing evidence that Plaintiff has been pepper sprayed, assaulted staff and inmates with weapons, and involved in physical altercations on numerous occasions before and after January 24, 2005, to dispute his damages claims and to impeach him at trial should he testify to the contrary.

Defendants reason that Plaintiff alleged that their (Defendants') conduct on January 24, 2005, exacerbated his eye condition, caused him to develop eye infections, severe depression, and bi-polar disorder and resulted in "humiliation and fear."  (Third Am. Compl. ¶¶ 70, 79; Pl.'s Resp. Interrog. 8.)  Plaintiff's disciplinary history shows that he was pepper sprayed on the following dates: February 12, 2000, June 17 and 23, 2005, January 1, 2006 (where he refused decontamination), July 30, August 14, and September 12.  (Rules Violation Reports, attached as Ex. I, ECF No. 212.)  In addition, to these pepper-spray incidents, Plaintiff has been involved in no less than five physical altercations with inmates and staff which included the use of weapons.  (Id.)  Defendants contend they are entitled to present this evidence to dispute that Plaintiff's purported chronic eye condition and eye infections were caused or exacerbated by one or all of the other numerous pepper-spray incidents in which Plaintiff was involved as opposed to the incident on January 24, 2005.  Similarly, Defendants contend they are entitled to introduce this evidence to show that Plaintiff's mental-health conditions and alleged "fear" were caused by one of the other incidents, rather than Defendants' conduct.

a.    Exclusion of Rules Violation Report, Log No. IVASH-05-01-0068

Plaintiff seeks to exclude Rules Violation Report, Log No. IVASH-05-01-0068, for violation of Title 15 of California Code of Regulations, section 2005(c), "Battery on a Peace Officer with a Weapon Causing Serious Injury."  (Declaration of Kenneth K. Lee, Ex. 6; ECF No. 203.)  After an internal investigation conducted by corrections staff, Plaintiff was found guilty and assessed 360 days loss of credit forfeitures.  Plaintiff seeks to exclude the entirety of this report, along with evidence that he was found guilty or assessed a penalty, for the same reasons discussed above.  It is no probative of

whether Defendants violated Plaintiff's Eighth Amendment rights by spraying copious amounts of pepper spray into his cell, executing an emergency cell extraction during which Plaintiff was shackled and forcibly removed from his cell, or refusing to provide adequate medical care when Plaintiff complained of eye pain.  It is also irrelevant, highly prejudicial, and constitutes inadmissible hearsay.

Defendants oppose Plaintiff's motion to the extent he seeks to exclude Rules Violation Report No. IVASH-05-01-0068 because portions of the report are admissible prior inconsistent statements and admissions by Plaintiff.  Fed. R. Evid. 613, 801(d).  Defendants submit that in connection with the disciplinary process arising from the extraction, Plaintiff made statements to the Investigating Employee and the Senior Hearing Officer about his conduct on January 24, 2005.  (ECF No. 203-5 at 5, 10.)  Defendants reason these statements are admissible to impeach Plaintiff and to show his prior inconsistent statements about what occurred and what he did during the extraction.  Defendants do not oppose excluding the guilty finding of No. IVASH-05-01-0068, but contend Plaintiff's prior statements are admissible.

**Ruling:**  Plaintiff's motion to exclude evidence of his prior disciplinary history is GRANTED, without prejudice, to renewal by Defendants during trial, if appropriate.

3.    Plaintiff's Mental Health Records

Plaintiff moves to exclude evidence of his mental health records as irrelevant and unfairly prejudicial, impermissible character evidence, and protected under the psychotherapy privilege.

In this case, the jury must decide whether Defendant used force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Plaintiff argues that his mental health records *following* the incident at issue are simply not probative of whether Defendants' conduct on the morning of January 24, 2005 was appropriate.  There is no evidence that Plaintiff was acting erratically or displaying psychotic behavior that morning, or that the Defendants' actions were motivated or influenced by his mental health status.  Admission of Plaintiff's mental health records from January 24 and 25, 2005 would cause Plaintiff to suffer significant prejudice.

Furthermore, communications between a patient and medical doctors to diagnose mental health issues and the records reflecting the patient's mental health issues are privileged.  The psychotherapy privilege is waived in only limited circumstances, such as where the plaintiff puts these

communications directly at issue by alleging more than "garden variety" emotional distress.

Fitzgerald v. Cassil, 216 F.R.D. 632, 636 (N.D. Cal. 2003).  In this instance, Plaintiff will not pursue a claim that Defendants' actions caused him chronic psychological harm and is not seeking damages for psychological injury beyond general emotional injuries.  Plaintiff submits that he is no longer pursuing his claim that Defendants violated his constitutional rights by improperly admitting him to the suicide ward without providing him the required procedural safeguards.

Defendants argue that because Plaintiff put his mental-health condition at issue by alleging that Defendants' conduct caused him severe depression and bi-polar disorder, such mental-health records are admissible to dispute the claim for damages.  (Third Am. Compl. ¶ 79; Pl.'s Resp. to Interrog. 8.)  Defendants submit that the records show Plaintiff complained about suffering from severe depression, anxiety, manic depression, and an inability to sleep before the January 24, 2005 extraction.  (Jan. 21, 2005 Health Care Request Form, attached as Ex. J, ECF No. 212.)  In addition, the medical records will reveal that he told medical and mental-health providers that treated him on January 24 and 25, 2005, that he was paranoid and depressed days before the incident at issue here.

Defendants further argue that even if Plaintiff withdraws his claim for "chronic psychological harm," the records are still relevant to Plaintiff's credibility and to rebut his anticipated testimony that he was cooperating and responding to staff before the use of pepper spray and that he did not resist staff's efforts to restrain after they entered the cell.  (See Jacobs Dep. 38:14-41:21, 60:22-71:23.)  The jury is entitled to hear Plaintiff's statements that he was anxious and paranoid to determine whether his contention that he was cooperative and passive during the incident is credible.  The Court should therefore deny Plaintiff's motion to exclude his mental-health records.  Defendants are agreeable to redacting any portion of the records that does not reflect Plaintiff's state of mind during the extraction.

**Ruling:**  Plaintiff's motion to exclude evidence of his mental health records is DENIED, without prejudice, to renewal by way of objection during trial.

4.     Evidence of the Makeshift Weapons Purportedly Found in Plaintiff's Cell and Evidence of Injuries Sustained by Officers Blakenship and Granillo During the Cell Extraction

The Rules Violation Report connected to the January 24, 2005 incident at issue reports that correctional officer Abarquez "found three possible weapons" during his search of Plaintiff's cell

7

following the cell extraction: Two pieces of a broken toothbrush and a pen cap.  (Declaration of Kenneth Lee, Ex. 6; ECF No. 203.)  Plaintiff argues that evidence of these "weapons" must be excluded because there is no evidence that Plaintiff actually used, or threated to use, them during the cell extraction.  None of the incident reports drafted by Defendants mention these items.  And when asked about them at depositions, Sergeant Watson, officer Blankenship, and officer Granillo uniformly denied seeing Plaintiff with a toothbrush, pen cap, or any other weapon.  (Declaration of Kenneth Lee, Ex. 2; Blankenship Depo. Tr. at 62:24-63:4 ["Did you see Mr. Jacobs holding any of these items? A" No."]; id. at 71:1-2 ["Did you see a weapon? A: No."]; Ex. 3, Granillo Depo. Tr. at 43:12-20 ["Had you seen any of these items when you were doing the cell extraction? A: No. Q: Was Mr. Jacobs holding any of these items? A. I'm not aware of it.  Q: Did you see Mr. Jacobs use either of these items? A: No."] id. at 53:15-16 ["Q: Did you see Mr. Jacobs with a weapon? A. No."]; Ex. 1, Watson Depo. Tr. at 71:24-72:4 ["Had you see Mr. Jacobs with any of these items? A: No.  Q: Do you know where in his cell they were found? A: No, I don't."]).

Plaintiff contends the undisputed evidence shows that Defendants did not see Plaintiff with any weapons, and evidence regarding items purportedly found in his cell following the cell extraction is irrelevant to his claim of excessive force.

During the cell extraction process, officer Blankenship and officer Granillo sustained minor injuries.  Officer Granillo had an abrasion on his right index finger and officer Blankenshiop sustained a cut to the back of his head.  (Declaration of Kenneth Lee, Ex. 5 at 3; ECF No. 203.)  Plaintiff submits that Defendants have indicated that they will present evidence, including photographs of these injuries.

Plaintiff argues evidence of these injuries should be excluded because officers Blankenship and Granillo are not the plaintiffs seeking remedies for their injuries, and such evidence is irrelevant.  Further, even if there is some probative value to justify their excessive use of force, the evidence should be excluded because there is no evidence that the injuries were caused by Plaintiff.  Both officers Blankenship and Granillo testified at their depositions that they do not remember how they were injured.  (Declaration of Kenneth Lee, Ex. 2, Blankenship Depo. Tr. at 51:14-16 ["Q: Do you know what caused the injury on your head? A: No."]; id. at 55:1-2 ["Q: Do you know how [officer

8

Granillo] got those injuries? A: it would be speculation."); Ex. 3, Granillo Depo. Tr. at 36:9-19 ["Q: Could you describe the cut on your finger?  A: Just abrasion and a small cut.  A: And when did you get that cut? A: During the extraction.  Q: Do you recall how it happened?  A: No….I'm not sure at what point it happened.  I just know when I came out I was bleeding."); id. at 38:6-9 ["Q: Did you see how [officer Blankenship was injured?]  A: No.  Q: Do you known how he got the cut on his head? A: No."].  Sergeant Watson, who supervised the cell extraction from the cell door, also testified that the did not see how officer Blankenship and officer Granillo were injured.  (Ex. 1, Watson Depo. Tr. at 52:12-16 ["Q: Did you see how [officer Blankenship] got injured?  A: No."]; id. at 54:3-5 ["Q: [D]id you see how [officer Granillo] was injured[?]…A: No, I didn't."]).

Plaintiff reasons that the injuries sustained by officers Blankenship and Granillo could have been caused by handling the shield or leg restraints used during the extraction process, or by accidentally being struck by another member of the extraction team while restraining Plaintiff.

Defendants oppose Plaintiff's motion on the ground that a jury can reasonably infer from the evidence to be presented that Plaintiff caused Blakenship's and Granillo's injuries.  Further, the injuries Plaintiff caused are relevant to the threat Defendants reasonably perceived during the extraction to justify the amount of physical force used, and to the veracity of Plaintiff's contention that he did not put up any kind of resistance.

Defendants Blankenship and Granillo argue that although they do not know how exactly they were injured, they both testified that they were injured during Plaintiff's cell extraction.  In Blankenship's incident report and deposition testimony, he asserted that he saw Plaintiff wiggle his arms out from underneath the shield, saw Plaintiff raise his hands, and as Blankenship lowered his head to shield his face, he felt a blow to the back of his head.  (Blankenship Incident Report; Blankenship Dep. 44:18-46:25, attached as Ex. K, ECF No. 212.)  Granillo testified that he knew he had been injured during the extraction because Plaintiff was struggling when he was taken down to the lower bunk inside the cell.  (Granillo Dep. 24:11-19, 24:25-25:25, attached as Ex. L, ECF No. 212.) Watson testified that he saw Plaintiff swinging at the officers with closed fists and fighting their efforts to restrain him, and that Blankenship and Granillo walked out with injuries not there before. (Watson Dep. 44:17-45:11, 52:2-53:18, attached as Ex. M, ECF No. 212.)

Defendants argue there is no evidence to Plaintiff's claim that Blankenship's head injury could have been caused by officer Crotty's use of the baton.  Crotty's incident report states that he was forced to leave the cell immediately after entering because Plaintiff removed his gas mask.  (Ex. G, ECF No. 212.)  Watson's and Granillo's testimony supports Crotty's account that Crotty was overcome by the pepper spray upon Plaintiff removing his mask.  (Watson Dep. 44:23-45:11, 52:2-53:18; Granillo Dep. 24:11-19, 24:25-25:25.)  Similarly, no evidence shows that Granillo's injuries were caused by his handling of the leg restraints.  (Id.)  Defendants submit that Plaintiff may question Blankenship and Granillo as to how they were injured and argue to the jury that the injuries were caused by something or someone other than Plaintiff, but evidence of the officers' injuries is relevant to their contention that Plaintiff was uncooperative and put up a fight before they restrained him.  And the jury can draw a reasonable inference—based on the weapons found, the injuries sustained, and the officers' testimony—that Plaintiff resisted their efforts to restrain him such that the officers' use of force inside the cell was justified.  (See Jacobs Dep. 67:7-17 (stating that he did not hit anyone during the extraction).)

**Ruling:**  Plaintiff's motion to exclude evidence of the weapons found in Plaintiff's cell and the injuries sustained by Defendants is DENIED.  Based on counsels' arguments at the motions in limine hearing, the probative value of evidence of the weapons and injuries is not substantially outweighed by any prejudice, and the weight of such evidence is for the jury to determine.

5.   Evidence of Plaintiff's Prior and Ongoing Lawsuits

Plaintiff seeks to exclude any evidence of his prior and/or ongoing lawsuits as irrelevant and unfairly prejudicial.

Plaintiff has previously filed lawsuits and grievances against prison officials, and has several cases currently pending in federal court.  Plaintiff submits that Defendants have indicated that they may seek to introduce evidence of Plaintiff's prior or ongoing lawsuits if the facts of those cases are similar to the circumstances of this case and suggest a pattern of behavior.  Plaintiff reasons that his other lawsuits, even those arising from similar circumstances, are not probative of whether Defendants acted in violation of Plaintiff's constitutional rights in this matter.

10

1    Defendants do not oppose Plaintiff's request to exclude evidence of Plaintiff's prior and

2  ongoing lawsuits.

3    **Ruling:**  Plaintiff's motion to exclude evidence of his prior and ongoing lawsuits is

4  GRANTED because such evidence is irrelevant to the present case.

5    **B.    Plaintiff's Requests to Seal Medical Records and Expert Reports**

6    On July 29, 2016, Plaintiff filed a request to seal his medical records from January 24 and 25,

7  2005.  (ECF Nos. 201 & 203.)

8    On August 12, 2016, Plaintiff filed a request to seal the expert report written by Dr. Di Stefano

9  and expert rebuttal report written Dr. Rudas on the ground such records are "confidential" and should

10  be protected from public disclosure.  (ECF Nos. 213 & 215, Exs. A & B.)

11    Defendants oppose Plaintiff's request to seal his mental-health records.  Defendants argue that

12  Plaintiff has put his mental-health at issue by claiming that the events of January 24, 2005, caused him

13  to suffer "humiliation and fear" and "great physical pain and agony, eye infections, severe emotional

14  and psychological distress and pain, including but not limited to severe depression."  (Third Am.

15  Compl. ¶¶ 70, 79, ECF No. 29 at 23, 25.)  In discovery, Plaintiff asserted that he developed bi-polar

16  disorder as a result of Defendants' conduct.  (Pl.'s Resp. Interrog. 8, attached Ex. F, ECF No. 212.)

17  Defendants reason these allegations are beyond a "garden-variety" claim for emotional distress.

18  Plaintiff asserts that he developed (or at least suffered an exacerbation of) serious mental-health

19  conditions—depression and bi-polar disorder.  Defendants are agreeable to redacting portions of

20  Plaintiff's records that are not relevant to this case (such as Plaintiff's family history, unrelated

21  mental-health or medical conditions, etc.).

22    "Historically, courts have recognized a 'general right to inspect and copy public records and

23  documents, including judicial records and documents.'"  Kamakana v. City & Cnty of Honolulu, 447

24  F.3d 1172, 1178 (9th Cir. 2006) (quoting Nixon v. Warner Communications, Inc., 435 U.S. 589, 597

25  & n.7 (1978)).  Unless a court document is one that has traditionally been kept secret a strong

26  presumption in favor of access is where the Court starts its analysis.  Kamakana, 447 F.3d at 1178.  A

27  party making a request to file documents under seal is generally required to show compelling reasons

28  to seal documents.  Pintos v. Pacific Creditors Ass'n, 605 F.3d 665, 677-678 (9th Cir. 2009).

**Ruling:** Plaintiff's motion to seal his medical and mental health records is DENIED, as the Court need not and did not rely on the medical and/or mental health records in rendering the rulings herein.

### C.   Defendants' Motions in Limine

Defendants seek to exclude: (1) Plaintiff's opinions about the diagnosis, prognosis, or cause of his eye and mental-health conditions; (2) evidence or testimony regarding dismissed Defendants or claims and unrelated claims and individuals; (3) Defendants' involvement in other lawsuits or incidents alleging excessive force; (4) conspiracy theories of a cover-up and fabrication of evidence; (5) Plaintiff's interpretation of prison regulations; (6) the California Department of Corrections and Rehabilitation's (CDCR) obligation to indemnify Defendants for any monetary award in the event of an adverse judgment; and (7) testimony by Plaintiff's medical expert, Dr. Luigi Di Stefano. Defendants also move to allow them to introduce evidence of Plaintiff's and any inmate-witness' date of conviction and sentence for impeachment purposes.

### 1.   Plaintiff's Opinions About the Diagnosis, Prognosis, or Cause of his Eye and Mental-Health Conditions

"If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.  As a non-expert witness, Plaintiff may testify as to what he saw or felt relating to his medical needs or condition, but may not testify as to any medical matter which requires scientific, technical or other specialized knowledge. Plaintiff also may not testify regarding his medical records.

**Ruling:** Defendants' motion in limine is GRANTED. Plaintiff may testify as to what he observed and experienced as a result of the January 24, 2005 incident; however, Plaintiff may not testify regarding a diagnosis, opinions, inferences or causation, and may not offer any opinions or inferences from any medical records.

///

///

12

2.       Evidence or Testimony Regarding Dismissed Defendants or Claims and Unrelated
Claims and Individuals

Defendants move to exclude Plaintiff from making any reference to Defendants, claims, or events that were dismissed or are irrelevant to his claims for excessive force and deliberate indifference.

Defendants submit that during discovery, Plaintiff propounded numerous written requests directed at matters and claims that are no longer at issue in this case, such as discovery related to retaliation and conspiracy claims.  Defendants also anticipate that Plaintiff will seek to elicit testimony from Defendant Crotty (who is expected to testify as a percipient witness) about his bankruptcy proceedings and related stay in this action.  Defendants argue that testimony or evidence about claims or events the Court has dismissed will confuse the jury and waste time.  Further, the evidence of Crotty's bankruptcy is not relevant to any issue the jury must decide, and any attempt to elicit such information will be solely for the purpose of embarrassing Crotty or placing him in a bad light.

Plaintiff does not oppose Defendants' motion to exclude reference to claims against Defendants that have previously been dismissed by the Court.

Federal Rule of Evidence 402 provides that all relevant evidence is admissible and evidence that is not relevant is inadmissible.  Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 403 provides that relevant evidence may be excluded if it will cause prejudice, undue delay, a waste of time, or a needless presentation of cumulative evidence in the discretion of the Court.  Obrey v. Johnson, 440 F.3d 691, 698 (9th Cir. 2005).

**Ruling:** Defendants' motion in limine is GRANTED.  Plaintiff may not provide testimony or reference any Defendants, claims, or events that were previously dismissed from this action as such evidence is not relevant and is subject to exclusion under Rule 403.

3.       Defendants' Involvement in Other Lawsuits or Incidents Alleging Excessive Force

Defendants move to exclude evidence that any Defendant is a party in another lawsuit or was involved in other incidents alleging misconduct is inadmissible, irrelevant, and highly prejudicial.

13

Defendants specifically seek to preclude Plaintiff from introducing evidence or eliciting testimony about other allegations of misconduct made against Defendants, their litigation history, including other civil-rights lawsuits, and other prison grievances (appeals) that have been filed against them for alleged misconduct.  Defendants submit that during discovery, Plaintiff propounded written requests seeking information about other inmate appeals and lawsuits filed against Defendants for excessive force, deliberate indifference, and other misconduct.  Defendants anticipate that Plaintiff will seek to use their responses to this discovery at trial or elicit testimony of their involvement in other lawsuits or inmate appeals.

Plaintiff does not oppose Defendants' motion to exclude evidence of allegations of misconduct or civil rights lawsuits brought against Defendants.

Federal Rule of Evidence 404(b) makes evidence of other wrongs or acts inadmissible to provide "the character of a person in order to show action in conformity therewith," but may be admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b); see also Fed. R. Evid. 405(b) (character evidence may be admissible if it is an essential element of the claim).

**Ruling:** Defendants' motion in limine is GRANTED as such evidence is impermissible character evidence.

4.     Conspiracy Theories of a Cover-Up and Fabrication of Evidence

Defendants seek to preclude Plaintiff from offering or eliciting testimony about fabrication of evidence or conspiracies among prison staff because no evidence supports these contentions.

Defendants submit that during written discovery and at his deposition, Plaintiff expressed his intention to testify about, introduce evidence of, or elicit testimony concerning Defendants fabrication or planting of evidence, and their conspiracy with mental-health staff to place him on suicide watch and to transfer him to another prison.  Defendants seek to preclude such evidence because Plaintiff did not disclose any facts or evidence to support his contention of a purported conspiracy.  "His "belief" that Defendants "planted" the weapons found in his cell following his emergency extraction or that they convinced mental-health staff to place him on suicide watch is not evidence.  These contentions are speculation and have no factual foundation.

14

Rather, Officer Abarquez's incident report and anticipated trial testimony shows that a couple of manufactured weapons were discovered in Plaintiff's cell after his extraction.  (Report of Abarquez, Ex. B; ECF No. 200.)  Abarquez photographed and collected the weapons.  Plaintiff is free to question Abarquez about his investigation, how he collected the evidence, and what measures he took to preserve and secure the "crime" scene.  Similarly, Plaintiff is free to question mental-health staff who treated him after the extraction about the basis for their decision to place and keep him on suicide watch and whether any Defendant influenced their decision.  But Plaintiff cannot simply argue or testify that there was a conspiracy among mental-health and custody staff or that evidence was planted in his cell because there is not a scintilla of evidence to support Plaintiff's conspiracy theory.  Without an offer of proof that some evidence supports his theory, the Court should exclude evidence of any purported conspiracy, cover-up, or fabrication of evidence.

Plaintiff does not oppose Defendants' motion to exclude testimony about fabrication of evidence or conspiracies against prison staff.

Federal Rule of Evidence 402 provides that all relevant evidence is admissible and evidence that is not relevant is inadmissible.  Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 403 provides that relevant evidence may be excluded if it will cause prejudice, undue delay, a waste of time, or a needless presentation of cumulative evidence in the discretion of the Court.  Obrey v. Johnson, 440 F.3d 691, 698 (9th Cir. 2005).

**Ruling:** Defendants' motion in limine to exclude testimony about fabrication of evidence or conspiracies against prison staff is GRANTED as such evidence is not relevant.

5.    Plaintiff's Interpretation of Prison Regulations

Defendants move to exclude testimony by Plaintiff about prison policies and regulations or the proper procedure for conducting a cell extraction.

Defendants submit throughout discovery, Plaintiff repeatedly alleged that Defendants violated CDCR and prison regulations and procedures in the manner in which his cell extraction was performed.  Relying on relevant regulations governing the calculated use of force, Plaintiff contends

that Defendants failed to video tape the extraction or secure the presence of medical staff during the extraction.  Defendants maintain that Plaintiff's January 24, 2005 extraction was an emergent situation such that the protocols for a calculated use of force did not apply.

Defendants contend that Plaintiff has no expertise in prison management, thus he cannot testify about prison regulations or procedures, whether there was a violation of those procedures, the intent behind the regulations, or how the regulations or procedures were executed or interpreted by supervisory staff.  Nor does he have the requisite personal knowledge to offer an opinion about whether Defendants' response during and after the January 24, 2005 cell extraction complied with prison regulations.  Plaintiff may question at trial the supervisory Defendants, such as Castro, Johnson, and Watson, about the extraction procedures and regulations, any discrepancies between the written procedures and Defendants' conduct, and the basis for their decision to authorize an emergency extraction versus a calculated use of force.  But Plaintiff lacks the requisite expertise to opine that Defendants violated prison procedures or that prison regulations required alternative action.  Thus, he may not offer as evidence his own opinion on matters which require scientific, technical, or other specialized knowledge as he is not qualified as an expert to provide such testimony.  Fed. R. Evid. 701, 702.

Plaintiff does not oppose Defendants' motion in limine to exclude him from interpreting prison regulations.

Federal Rules of Evidence, Rule 701 allows a lay witness to offer opinions that are (a) rationally based on the witness's perception, (b) helpful to the jury, and (c) not based on scientific, technical, or other specialized knowledge within the scope of expert testimony.

**Ruling:** Defendants' motion in limine is GRANTED, as Plaintiff may not offer expert opinion testimony relating to prison regulations.

6.    The California Department of Corrections and Rehabilitation's Obligation to Indemnify Defendants for any Monetary Award in the Event of an Adverse Judgment

Defense counsel seeks to exclude Plaintiff from presenting or eliciting testimony that Defendants will be indemnified by the State if judgment is rendered against them under Rule 411 of the Federal Rules of Evidence.  Defendant submits this evidence is both irrelevant and prejudicial.

16

1   Jamison v. A.M. Byers Co., 330 F.2d 657, 661-662 (3d Cir. 1964).  The evidence is prejudicial

2   because a jury is more inclined to find a verdict against a defendant if it believes that he is indemnified

3   than would be the case if it were understood that the defendant alone would be required to satisfy the

4   judgment.  Langley v. Turner's Express, Inc., 375 F.2d 296, 297 (4th Cir. 1967).

5          Plaintiff does not oppose Defendants' motion in limine to exclude evidence that the State may

6   pay any judgment rendered against them.

7          **Ruling:** Defendants' motion in limine is GRANTED, as information regarding whether the

8   State or CDCR would pay a verdict or reimburse Defendant for any compensatory damage award, if

9   any, is not relevant to Plaintiff's claim of retaliation.  Fed. R. Evid. 401.

10         7.      Conviction and Prior Disciplinary History

11         See discussion above in section A(1) & (2).

12         8.      Objection to Expert Witness Dr. Di Stefano

13         Defendants seek to exclude the testimony of Dr. Di Stefano, Plaintiff's medical expert, because

14  his testimony is speculative and will not be helpful to the jury.  Fed. R. Evid. 702.  On August 17,

15  2016, Defendants filed a supplemental motion in limine to limit/exclude Dr. Di Stefano's testimony, in

16  light of fact that on August 4, 2016, Dr. Di Stefano was deposed, and defense counsel did not receive

17  the transcript until August 16, 2016.  (ECF No. 216.)

18         Plaintiff seeks to offer the testimony of Dr. Luigi Di Stefano, a physician specializing in

19  Emergency Medicine, to provide testimony about Plaintiff's symptoms and eye condition following

20  the use of pepper spray on January 24, 2005.  (Pl.'s Expert Disclosure, Ex. C; ECF No. 200.)  Dr. Di

21  Stefano opines that: (1) Plaintiff's exposure to pepper spray on January 24, 2005 likely caused his

22  initial symptoms of redness, pain, and irritation; (2) Plaintiff's chronic Dry Eye Disease (DED) makes

23  him more susceptible to eye irritation and infection; this was exacerbated by his exposure to pepper

24  spray on January 24, 2005, which caused a chemical conjunctivitis that likely progressed into an

25  infectious conjunctivitis; and (3) Plaintiff's initial symptoms of redness, pain, and irritation could have

26  been alleviated more quickly by immediate flushing of his eyes with saline or water.  (Pl.'s Expert

27  Disclosure at 9.)

28

1   Defendants argue that Dr. Di Stefano's first opinion is not helpful because it is undisputed that

2   Plaintiff's exposure to pepper spray caused him some "redness, pain, and irritation."  The common

3   effect of pepper spray, such as irritation, redness, discomfort or pain, are undisputed and within the

4   common knowledge of the jury that Dr. Di Stefano's testimony on this point is unnecessary and

5   unhelpful.  Dr. Di Stefano's second opinion is unreliable and not supported by the evidence upon

6   which he relief.  Dr. Di Stefano acknowledged that Plaintiff was not diagnosed with DED until

7   October 9, 2009—more than four years after the incident at issue.  (Pl.'s Expert Disclosure, Ex. C,

8   ECF No. 200.)  The doctor cites no medical record (and Defendants have found none) that show

9   Plaintiff had or suffered from DED before January 24, 2005.

10   Dr. Di Stefano's third opinion that Plaintiff's initial symptoms after exposure could have been

11   alleviated by flushing the eyes with water or saline is also not helpful to the jury because it is

12   undisputed that providing a person with copious amounts of cool water is part of the decontamination

13   process.  Lastly, Dr. Di Stefano's provides no factual or medical basis for concluding that Plaintiff's

14   eye infection was caused by pepper-spray exposure.  Dr. Di Stefano's report concedes, conjunctivitis

15   can be caused by exposure to chemical agents (such as pepper spray) or bacterial or viral strains.

16   (Pl.'s Expert Disclosure at 8.)  However, Dr. Di Stefano's opinion that Plaintiff's conjunctivitis was

17   chemical as opposed to infectious is not supported by the record.

18   In their supplemental motion in limine to limit/exclude Dr. Di Stefano's testimony, Defendants

19   argue Dr. Di Stefano should be precluded from testifying that Plaintiff's DED made him more

20   susceptible to eye irritation and infection (second opinion) and that Plaintiff's eye symptoms after

21   exposure could have been alleviated by flushing his eyes with water or saline (third opinion) because

22   his opinions are not supported by factual evidence and his testimony confirms that the

23   decontamination process was adequate.

24   Defendants submit that at his deposition, Dr. Di Stefano was specifically asked for the basis for

25   concluding that Plaintiff had DED or DED symptoms on or before January 24, 2005, and he

26   responded:

27   I believe it's **possible** that he was suffering from dry eye disease at that time.  [¶] Upon
      reviewing the records, it appears that he was diagnosed with dry eye disease, as you may have

28

18

seen, in 2009.  Prior to that, it appears he had been diagnosed with glaucoma, at least according to some of the records I saw in passing.  Since dry eye disease is a chronic condition, I think it is **reasonable to believe** that he may have had this condition present prior to the diagnosis of it in 2009.  (Di Stefano Dep. 51:13-24 (emphasis added by Defendants).)

When asked to identify the records upon which he was relying that showed Plaintiff had symptoms consistent with DED, Dr. Di Stefano could not identify any.  (Di Stefano Dep. 51:25-51:6.)  When asked whether the medical records showed that Plaintiff complained of chronic dry eyes before January 2005, Dr. Di Stefano stated that there were "no specific mentions that I recall pertaining to chronic dry eye.  I saw that he had been getting some glaucoma drops."  (Id. 59:10-21.)  But Dr. Di Stefano conceded that glaucoma drops are not used to treat chronic DED.  (Id.)  He further conceded that he could not explain why Plaintiff developed DED since Plaintiff is a relatively young man and does not have an autoimmune disease.  (Id. 60:14-61:17.)

At his deposition, Dr. Di Stefano explained that the purpose of his third opinion (regarding immediate flushing of his eyes) was to address the absence of any evidence, from what he was provided, that Plaintiff had any decontamination or treatment afterwards.  (Id. 72:5-15.)  After reviewing Defendant Watson's incident report and Plaintiff's deposition testimony (attached as Ex. A to Defendants' motions in limine), Dr. Di Stefano agreed that the decontamination Plaintiff received after exposure "medically [sic] it would be a fairly appropriate, at least at the time, you know, not having access immediately to a medical facility, would be appropriate attempt at treatment."  (Id. 74:18-75:3.)

Under Federal Rule of Evidence 702, an expert may testify if, among other things, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Trial judges are charged with the responsibility of acting as "gatekeepers" to ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993).

**Ruling:**  Defendants' motion in limine is DENIED, without prejudice.  The evidence sought to be excluded in this instance is not accurately and efficiently evaluated in a motion in limine and it is necessary to defer ruling until during trial.  Jonasson, 115 F.3d at 440.  The Court will determine the

admissibility of Dr. Di Stefano's expert testimony during trial and such testimony will be evaluated under the applicable rules of law.

IT IS SO ORDERED.

Dated:   **August 22, 2016**

UNITED STATES MAGISTRATE JUDGE

20